UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOMINGO BORGES, 93A2919,

                          Plaintiff

-vs-

SUPERINTENDENT MICHAEL MCGINNIS,
et al.,

                         Defendants.

_____

DECISION AND ORDER

03-CV-6375 CJS

      This is an action in which the plaintiff, a prison inmate, is suing concerning his conditions of confinement, pursuant to 42 U.S.C. § 1983. Now before the Court is defendants' motion [#45] for summary judgment. For the reasons that follow, the application is granted and this action is dismissed.

## BACKGROUND

      Unless otherwise noted, the following facts are taken from defendants' Rule 56 Statement of Facts, which is uncontested.[1] At all relevant times, plaintiff was an inmate at Southport Correctional Facility ("Southport."). On or about November 24, 2001, corrections staff at Southport observed plaintiff receive from a visitor (his mother) what appeared to be contraband drugs. Suspecting that plaintiff had subsequently ingested the contraband, corrections staff placed him in an observation cell, where he remained from 1:00 p.m. on November 24, 2001 until 12:20 p.m. on November 27, 2001. Plaintiff was

---

[1] "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Local Rule 56.1(c).

videotaped during this entire period, except when he covered the camera, and in support of the instant motion, defendants submitted to the Court 10 VHS videotapes of plaintiff in the cell.

The observation cell was "a strip cell which is used for one on one drug watch." (Pl. Dep. 19). According to Department of Correctional Services' ("DOCS") Directive 4910, inmates suspected of ingesting contraband are kept in such observation rooms until they twice pass stools that are negative for contraband. (McGinnis Aff. [#56], Ex. A). Plaintiff's observation cell contained only a sleeping platform. There was not a functioning toilet, though plaintiff was provided with a bedpan when he needed to urinate or defecate.

When he was placed in the isolation cell, plaintiff was given a paper gown, paper shoes, and a thin mattress. Plaintiff requested that he also be given a blanket, to which he was entitled pursuant to Directive 4910. However, staff refused to provide a blanket, because they were unaware that it was required by Directive 4910. More specifically, Corrections Officer ("C.O.") Scott Marshall ("Marshall") states, in an affidavit, that he inadvertently failed to provide plaintiff with a blanket, because he thought that plaintiff was supposed to be treated similarly to inmates who are on suicide watch, who do not receive blankets. (Marshall Aff. [#55]).

On or about November 25th, plaintiff punched a glass window in his cell. Though he did not damage the glass, plaintiff later indicated that he thought his hand was broken. A staff nurse, Carmen Miller, R.N. ("Miller"), examined plaintiff's hand on November 26th and reported "zero swelling, zero deformity. Good range of motion. No apparent distress." (Pl. Dep. 71). There is no indication that plaintiff's hand actually was fractured, or that he suffered anything more than temporary discomfort from punching the window.

Early on November 26, 2001, plaintiff covered the video camera monitoring his cell

with a piece of his paper gown.  Corrections staff gave plaintiff several direct orders to remove the obstruction, but he refused.  Later that day, plaintiff asked Sergeant Gary Morse ("Morse") for a blanket.  Morse spoke with Captain Joseph Bellinier ("Bellnier"), who indicated that, pursuant to Directive 4910, plaintiff was entitled to receive a pillow, sheets, and blanket.  Bellnier also issued a written memorandum to that effect.  However, as a result of plaintiff covering the video camera and refusing the direct orders to remove the obstruction, another supervisor, Captain William Wilcox ("Wilcox"), placed a deprivation order against plaintiff, depriving him of "bed linen, pillow, [and] blankets," though he was allowed to keep his mattress and gown. (Wilcox Aff. [#68] Ex. A).  In other words, although plaintiff would have received a blanket pursuant to Bellnier's order had he not covered the camera, he did not receive a blanket due to the resulting deprivation order.

Once plaintiff removed the paper obstruction from the camera, Sergeant Morse brought him hot water, a basin, soap, washcloth, tootbrush, and toothpaste. (Pl. Dep. 57). Later that day plaintiff returned the hygiene items, and corrections staff found a balloon containing marijuana hidden inside the toothpaste tube. (Bellnier Aff. [#50], Ex. B, p. 4). Plaintiff was later found guilty of possessing marijuana at a tier disciplinary hearing, and served 12 months in the Segregated Housing Unit. (Pl. Dep. 62-63).

In addition to the personal hygiene items detailed above, corrections staff also provided plaintiff with his regular meals during his stay in the observation room, though he alleges that he was denied breakfast on the morning of November 26th. (Pl. Dep. 65-66).

During the three-day period that plaintiff was in the isolation cell, outside temperatures at Southport ranged between 62 and 40 degrees Fahrenheit.  Plaintiff contends that a window in his cell was open during this period.  However, while it is undisputed that plaintiff complained about the cell being cold, there is no indication that he

complained specifically about the window being open. Plaintiff does not know what the temperature was in the cell, but he estimates that it was "probably 50 degrees, around there. Probably less." (Pl. Dep. 27). In general, he contends that it was "cold." (Pl. Dep. 24-26). Defendants, on the other hand, indicate that the indoor temperature during that period was not extremely cold. (Pl. Dep. 26). Plaintiff did not suffer any physical injuries as a result of being kept in the isolation cell, except that he claims to have caught a cold, which lasted "a couple of days." (Pl. Dep. 58-60).

Corrections officers observing plaintiff made notes in a log every 15 minutes during his stay in the observation room. (Bellnier Aff. [#50] Ex. C). Many, if not most, of the entries indicate that plaintiff was lying on the bed, asleep or appearing to be asleep. Other entries indicate that plaintiff was exercising, walking around the cell, sitting on the floor, or looking out the window. (*Id*.). These observations appear accurate, based on the Court's viewing of randomly-selected portions of the videotape exhibits. Plaintiff was removed from the cell temporarily on the morning of November 27th, so that the cell could be cleaned.

Plaintiff had no problems or "bad blood or ill will" with any of the defendants prior to being placed in isolation. (Pl. Dep. 8-9). Although plaintiff contends that corrections staff denied his requests for a blanket, he does not contend that they verbally abused him or used any type of epithet toward him.

Defendants filed the subject summary judgment motion on December 28, 2005. In support of the motion, defendants submitted affidavits from the individual defendants, the aforementioned video tapes, photographs of the cell, log notes, climatological data, and plaintiff's deposition transcript. The affidavits of Superintendent Michael McGinnis ("McGinnis"), Deputy Superintendent Michael Corcoran ("Corcoran"), Assistant Deputy

Superintendent Lawrence Weingartner ("Weingartner"), Lt. David Augustine ("Augustine"), Lt. Richard Donahue ("Donahue"), and Lt. Charles Marshall ("Marshall") all essentially indicate that they did not personally know that plaintiff was in the observation cell or that he was complaining of being cold. On the other hand, Bellnier, Wilcox, Morse, Miller, Marshall, Sgt. Richard Moriarty ("Moriarty"), Sgt. John Morton ("Morton"), C.O. William Meck ("Meck"), C.O. James O'Herron ("O'Herron"), C.O. Kevin Qualey ("Qualey"), C.O. Lynn Rice ("Rice"), C.O. Douglas Westervelt ("Westervelt"), C.O. Alan Wheeler ("Wheeler"), and C.O. Byron Potter ("Potter"), all essentially indicate that they knew that plaintiff was in the observation cell, but deny that the cell was dangerously cold, though some acknowledge that plaintiff complained to them of being cold. And finally, defendant Thomas Giltner ("Giltner") indicates that he was not employed at Southport during the relevant three-day period. Defendants contend that: 1) all claims against them in their official capacities must be dismissed; 2) plaintiff has not established a factual basis for imposing supervisory liability; and 3) plaintiff's conditions of confinement did not violate the Eighth Amendment.

As part of defendants' motion, they filed and served a "Notice to Pro Se Litigants Opposing Summary Judgment" as required by Local Rule 56.2 and *Irby v. New York City Transit Authority*, 262 F.3d 412 (2d Cir. 2001). *See*, Notice [#71]. The Court subsequently issued a Motion Scheduling Order [#72], which directed plaintiff to file and serve a response on or before February 28, 2006. Plaintiff has never filed a response to the summary judgment motion, although he has filed an amended complaint, which amended the caption of the action, as well as a motion for appointment of counsel, which was denied.

ANALYSIS

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").  Summary judgment is appropriate only where,

"after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

At the outset, the Court notes that, because plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, plaintiff did not respond to defendants' motion, even though he was specifically advised of the requirements of Rule 56. In that regard, the Court notes that Rule 56(e) is clear that, when a properly supported summary judgment motion is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Based upon the entire record, the Court does not believe that plaintiff's failure was inadvertent. Rather, it appears that the facts of his claim are truly not in dispute, and that the motion can be resolved as a matter of law.

Turning, then, to the merits of plaintiff's claim, he is suing pursuant to 42 U.S.C. § 1983. The principles of law applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in

> alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

Here, plaintiff contends that defendants violated his Eighth Amendment rights by keeping him in a cold cell for three days without a blanket. For claims alleging unconstitutional conditions of confinement, it is clear that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994). The Second Circuit has stated the elements of such a claim as follows:

> While the Eighth Amendment's prohibition against cruel and unusual punishment does not mandate comfortable prisons, the conditions of confinement must be at least humane. In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate

> health or safety. A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates.

*Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)(citations and internal quotations omitted).

As to the objective prong of the analysis set forth above, "an Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold." *Id*. (*citing Corselli v. Coughlin*, 842 F.2d 23 (2d Cir. 1988)). However, an inmate cannot establish an Eighth Amendment claim merely by establishing that he was uncomfortably cold for a short period. For example, in *Grant v. Riley*, No. 89 Civ. 0359 (MBM), 1993 WL 485600 at *4 (S.D.N.Y. Nov. 24, 1993), the court granted summary judgment for defendants, stating:

> Plaintiff's Eighth Amendment claim is based on the allegation that there was no heat in his cell for at least 3 days. Plaintiff asserts that he had no coat, bedding or blankets for over nine hours, and that cold wind blew through the broken windows, which were incompletely covered with loose plastic. This Circuit has found that "deliberate exposure of inmates by prison authorities to bitter cold while in solitary confinement would be evidence of cruel and unusual punishment." *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir.1988). However, plaintiff does not claim that any defendant deliberately subjected him to the cold, and has alleged only a three-day period of exposure. *See Roach v. Kligman*, 412 F.Supp. 521, 527 (E.D.Pa.1976) (short period in cold, leaky cell does not violate Eighth Amendment). Furthermore, plaintiff did not suffer any harm as a result of these conditions. Plaintiff thus has failed to allege treatment that offends "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," *Estelle v. Gamble*, 429 U.S. 97, 102 (1976), and has not stated an Eighth Amendment claim.

(Some internal quotation marks omitted); *see also, Smith v. Burge*, No. 9:03-CV-0955 (LEK/GHL), 2006 WL 2805242 at *7 (N.D.N.Y. Sep. 28, 2006) (""Heat is a basic human need; and claims of lack of heat may state a claim. If, however, the condition is not sufficiently prolonged or severe, it does not rise to the level of an Eighth Amendment

9

violation.") (citations omitted).

In this case, plaintiff was kept in an observation cell for three days, because corrections staff were attempting to recover contraband which plaintiff had ingested during a visit with his mother. Defendants' suspicions in this regard were well-founded, and they eventually recovered a quantity of marijuana inside a balloon, which apparently plaintiff had swallowed. Although plaintiff was not given a blanket, he was given a paper gown, paper slippers, and a thin mattress. In this regard, plaintiff was treated in the same manner as inmates on suicide watch. As to the mattress, the Court notes that it was a thin mattress pad that plaintiff actually used as both a shawl and a blanket. Plaintiff spent much of his time lying on the bed, covered with the "mattress," and apparently asleep. For reasons that no one has explained, a window in the cell was open, and the cell temperature was around 50 degrees, which undoubtedly and unfortunately made plaintiff uncomfortable. Plaintiff was provided with meals, personal hygiene items, and medical attention. Moreover, it is undisputed that plaintiff would have been provided with a blanket on November 26th if he had not violated facility rules by covering the security camera.

Overall, plaintiff does not allege that he suffered anything more than frustration and discomfort as a consequence of the coldness of his cell. Thus, his claim does not rise to the level of a condition of confinement that violates the Eighth Amendment. Moreover, even if plaintiff could establish the objective element of an Eighth Amendment claim, he has not submitted evidentiary proof in admissible form to refute defendants' affidavits averring that they were not subjectively deliberately indifferent to his condition. Further, even assuming, *arguendo* that plaintiff had established an Eighth Amendment violation as to some defendants, which he has not done, the official capacity claims and supervisory liability claims would nevertheless have to be dismissed, as plaintiff has not established

any basis for them. Finally, Giltner would be entitled to summary judgment in any event, because there is no evidence that he was employed at Southport on the relevant dates.

## CONCLUSION

For all of the foregoing reasons, defendants' summary judgment motion [#45] is granted and this action is dismissed.

So Ordered.

Dated: Rochester, New York
April 25, 2007

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge